UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

STACEY D.,[1]

                              Plaintiff,

    v.                                                           3:20-CV-949 (FJS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

---

HOWARD D. OLINSKY, for Plaintiff
NICOLE BOUDREAU, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

**REPORT and RECOMMENDATION**

This matter was referred to me for report and recommendation to the Honorable Frederick J. Scullin, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

**I.    PROCEDURAL HISTORY**

Plaintiff protectively filed an application for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on May 19, 2014, alleging disability beginning April 25, 2012. (Administrative Transcript ("T.") 88–89, 99–100, 110–11). These applications were initially denied on August 22, 2014. (T. 110-11). On July 25, 2016, plaintiff testified at a hearing before Administrative Law Judge ("ALJ") Elizabeth Koennecke. (T. 69–87). The ALJ issued a partially favorable decision on

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

September 8, 2016, finding that plaintiff became disabled on January 26, 2016, but not before that date. (T. 20–35). Specifically, the ALJ found that plaintiff had the RFC to perform the full range of sedentary work prior to January 26, 2016. (T. 27). However, the ALJ found that beginning on January 26, 2016, plaintiff had the RFC to perform less than the full range of sedentary work, and thus had become disabled as of that date. (*Id.*).

The Appeals Council denied plaintiff's request for review on July 5, 2017. (T. 1–6). Plaintiff commenced an action challenging the decision in the Northern District of New York. *Stacy D. v. Comm'r of Soc. Sec.*, No. 3:17-CV-1011 (ATB). In a Memorandum-Decision and Order dated February 1, 2019, I ordered that the decision of the Commissioner be reversed, and the case remanded "for a proper determination, based on medical opinion and other evidence, of when, between March 12, 2013 and January 26, 2016, plaintiff's symptoms worsened to the point that (1) she no longer had the sustained capacity required during the course of a forty-hour workweek to meet the quality, production, and attendance requirements of competitive remunerative work; and/or (2) she could no longer meet the sustained sitting and other exertional requirements of her prior work or other sedentary work." *Stacey D. v. Comm'r of Soc. Sec.*, 358 F. Supp. 3d 197, 213 (N.D.N.Y. 2019).

On May 13, 2019, the Appeals Council vacated the ALJ's September 8, 2016 decision and remanded the case for "further proceedings consistent with the order of the court." (T. 818). On May 4, 2020, ALJ Koennecke held a supplemental hearing at which she procured the testimony of independent medical expert Steven Goldstein,

2

M.D. (T. 726-55). The ALJ also heard testimony from vocational expert ("VE") Agnes Gallon, and plaintiff, to a limited extent. (*Id.*). After the supplemental hearing, plaintiff requested that the Appeals Council issue an Amended Remand Order, specifying that the district court ordered remand for the specific purpose of determining plaintiff's disability onset date between the period of March 12, 2013 and January 26, 2016. (T. 1002). The Appeals Council did not respond. On June 18, 2020, the ALJ issued a decision finding that plaintiff was not disabled from April 25, 2012 through the date of the decision. (T. 703-16).

## II.     GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hire if he applied for work

42 U.S.C. § 1382(a)(3)(B). The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI

disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled with-out considering vocational factors such as age, education, and work experience… Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B. Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of

4

review, "even more so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (Finding we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

**III.   RELEVANT TESTIMONY FROM SUPPLEMENTAL HEARING**

At the supplemental hearing, the ALJ first took testimony from independent medical expert Steven Goldstein, M.D. (T. 730–39). After Dr. Goldstein testified that he had reviewed the medical evidence of record, the ALJ asked him the following:

> Q: Now, the question that the court wanted answer[ed]. At any point based on the medical evidence that you reviewed, did the claimant lose the ability to perform full-time, sedentary work; so 40 hours a week as seated, sedentary

5

>             work?
>
> A:     Not in my opinion, your honor. I think she'd still be able to do that.

(T. 730). The medical expert further opined that plaintiff "would be able to function at a light level of physical activity." (T. 735). Dr. Goldstein clarified that he did not have any medical records for the period after 2016, thus "really d[i]dn't have any idea if [plaintiff could] function at a sedentary level now or not." (T. 731). The ALJ and plaintiff's counsel elicited other testimony from Dr. Goldstein, concerning plaintiff's medical impairments and the specific exertional and non-exertional limitations they posed. (T. 731–39).

Next, the ALJ took testimony from VE Agnes Gallon. (T. 740–49). After Ms. Gallon described plaintiff's past relevant work, the ALJ asked her to consider an

> individual 44 years old to 46 years old with a high school education and past relevant work as a Telephone Order Clerk. This individual can lift or carry 20 pounds occasionally, 10 pounds frequently; no limitations for sit, stand, or walking; there's no limitation for gripping . . . on the non-dominant side. There's some limitation in fine motor ability for the fourth and fifth fingers, so that typing might be affected; can't walk on uneven surfaces; no ladders or scaffolds; can frequently climb[ ] stairs and ramps; all the other posturals also can be performed frequently.

(T. 741–42). Ms. Gallon testified that such a person would have an "issue" returning to plaintiff's past relevant work, but could perform other light duty work in the national economy. (T. 742–45). The VE further testified that an individual who could not sit, stand or walk during the course of an eight-hour work day could not perform full-time work. (T. 746). As to time off task and absenteeism, Ms. Gallon testified that an

6

individual who was off task 20 percent of the workday, and/or absent at lest four days per month, could not maintain full-time employment. (T. 746–47). Nor could an individual who could not finish job duties as required, or who could only hold her head up on an occasional basis without needing to lay down. (T. 747).

At this point in the hearing, plaintiff's counsel challenged the ALJ's approach toward evaluating plaintiff's case on remand. Counsel argued that plaintiff did not appeal the favorable disability determination previously made by the ALJ as of January 26, 2016, and the only determination presently at issue was whether plaintiff should have been found disabled at an earlier date. (T. 749–50). The ALJ responded that her prior decision was "gone," and "none of [it] was upheld." (T. 750-51). She encouraged plaintiff's counsel to update the medical records so she could potentially determine a later onset date, while at the same time cautioned that any such evidence would be untimely and subject to the five-day rule. (T. 750).

Immediately prior to the conclusion of the hearing, plaintiff insisted on adding further testimony into the record. She stated that she was unable to drive, say certain words, or think straight. (T. 752). She suffered from memory deficits. (T. 753). Plaintiff would have preferred to continue working her former job, but "couldn't function." (*Id.*). She kept a notebook by her bed in order to remember day-to-day information. (T. 753–54). Plaintiff testified that "things were worse" than when the ALJ previously assessed her disability status. (T. 754).

### IV.   THE ALJ'S DECISION

The ALJ first addressed the district court's remand order. (T. 703). The ALJ

7

cited the court's conclusion that further consideration of plaintiff's disability onset date was required, as well as the court's instruction that the ALJ obtain the opinion of an independent medical expert. (*Id.*).² To this end, the ALJ indicated that she had "complied with the instructions of the District Court" in obtaining testimony from Dr. Goldstein. (T. 704). The ALJ stated that after reviewing the entire record, Dr. Goldstein "found no evidence prior to 2016 which would indicate a loss of [plaintiff's] capacity to perform full-time, sedentary work." (*Id.*). The ALJ interpreted Dr. Goldstein's observation that the record lacked medical evidence after 2016 as his opinion that there was "no evidence to support any loss of functioning subsequent to that time. Therefore, Dr. Goldstein found no evidence consistent with disabling limitations at any point from 2013, through 2016, to the present." (*Id*). The ALJ further asserted her jurisdiction to redetermine plaintiff's disability status, because "the District Court did not affirm any part of [her] decision, rather it was reversed and remanded." (T. 705). Accordingly, the ALJ concluded that "the Appeals Council acted properly to vacate the decision in its entirety[.]" (*Id.*).

Proceeding with the sequential disability analysis, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. (T. 707). At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 12, 2013, the date through which plaintiff was found not disabled by prior determination. (*Id.*). At step two, the ALJ found that plaintiff had the following severe impairments: residual effects of a cerebrovascular

---

²The ALJ also acknowledged the undisputed fact that plaintiff was precluded from establishing disability on or before March 12, 2013. (*Id.*).

accident, migraine headaches, and morbid obesity. (*Id.*). The ALJ found at step three that plaintiff's impairments, singularly or in combination, did not meet or equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 710).

At step four the ALJ determined that the plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant has the following additional limitations: she is unable to walk on uneven surfaces; she can frequently, but not continuously, balance, stoop, kneel, crouch, crawl, climb ramps and climb stairs; but, she cannot climb ladders, ropes or scaffolds. The claimant has no limitations gripping objects with her hands, but she has decreased fine motor movements in the fourth and fifth fingers of her non-dominant hand; such that typing would be affected.

(T. 711).

Based on the above RFC, the ALJ found that plaintiff could not perform her past relevant work. (T. 715). However, at step five, using the Medical Vocational Guidelines as a "framework," and the VE's testimony, the ALJ found that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (T. 716). Thus, the ALJ found that plaintiff was not disabled from April 25, 2012 through June 18, 2020, the date of the decision. (*Id.*).

## V.     ISSUES IN CONTENTION

Plaintiff raises the following arguments in her brief:

1. The Appeals Council erred in vacating the prior favorable portion of the partially favorable decision contrary to the district court's order or, in the alternative, the ALJ erred in interpreting the Appeals Council's order to indicate such. (Plaintiff's Brief ("Pl.'s Br.") at 15–17) (Dkt. No. 14).

2. The RFC determination is not supported by substantial evidence because

9

        the ALJ erred in weighing and developing the opinion evidence.  (*Id.* at 17–20).

3.    The ALJ's assessment of plaintiff's subjective complaints, and her failure to include mental limitations in the RFC, are not supported by substantial evidence.  (*Id.* at 20–22).

Defendant contends that the ALJ properly reconsidered plaintiff's disability status on remand, and that the only issue before this court is whether the Commissioner applied the correct legal standards, and whether substantial evidence supports the Commissioner's decision that plaintiff was not disabled during the period from April 25, 2012 through June 18, 2020. (Defendant's Brief ("Def.'s Br.") at 6–16) (Dkt. No. 19).  For the following reasons, this court agrees that the ALJ committed legal error in revisiting plaintiff's disability status as of January 26, 2016, and this matter should be remanded to afford the Commissioner an opportunity to comply with this Court's February 1, 2019 remand instructions.

## DISCUSSION

### VI.  ALJ's COMPLIANCE WITH REMAND ORDER

    **A.**    **Legal Standards**

There are two "branches" of the law-of-the-case doctrine. One branch is a nonbinding doctrine that "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

"The doctrine's second branch is the nondiscretionary 'mandate rule,' which flows from the hierarchical decision-making systems it concerns." *Frank K. v. Comm'r of Soc. Sec.*, 371 F. Supp. 3d 163, 170 (D. Vt. 2019) (citing *In re Coudert Bros. LLP*, 809 F.3d 94, 101 n.2 (2d Cir. 2015)). Under the mandate rule, "where a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014).

With respect to administrative agency determinations, "ALJs have acknowledged throughout the years that the remand instructions they receive from the federal district court are the law of the case." *Gladle v. Astrue*, No. 12-CV-0284, 2013 WL 4543147, at *3 (N.D.N.Y. 2013) (quoting *Thompson v. Astrue*, 583 F. Supp. 2d 472, 475 (S.D.N.Y. 2008)). "Similarly, the Commissioner is implicitly limited by any findings of the district court regarding the application for disability benefits." *Id.*, 2013 WL 4543147, at *3.

There is also an "administrative version of the mandate rule contained in the applicable SSA regulations, which provide that, upon remand, an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b), 416.1477(b). Accordingly, reviewing courts have found that failure to comply with the Appeals Council's remand order may be grounds for remand. *See Dommes v. Colvin*, No. 3:15-CV-977 (GTS), 2016 WL 7104900, at *4-5 (N.D.N.Y. Dec. 6, 2016)

(remanding for calculation of benefits based on ALJ's failure to comply with District Court order and Appeals Council's remand order to follow treating physician rule); *Mortise v. Astrue*, 713 F. Supp. 2d 111, 123-24 (N.D.N.Y. 2010) (remanding based on the ALJ's failure to comply with the Appeals Council's remand order to follow the treating physician rule); *Gorman v. Astrue*, No. 08-CV-0251, 2009 WL 4884469, at *10 (N.D.N.Y. Dec. 10, 2009) (ALJ's failure to comply with the Appeals Council's remand order was error worthy of remand).

However, where an issue is not "'precluded by remand order or the judgment of the court in the prior judicial review, that issue may be decided differently . . . on remand if the Commissioner applies the correct legal standard and substantial evidence in the record as a whole supports the decision.'" *Gusky v. Astrue*, 954 F. Supp. 2d 180, 190 (W.D.N.Y. 2013) (quoting *Thompson*, 583 F. Supp. 2d at 475 (quoting *Lucas v. Astrue*, No. 07-2143, 2008 WL 474286, at *4 (D. Kan. Jan. 29, 2008))). *See also Marvin v. Colvin*, No. 3:15-CV-74, 2016 WL 2968051, at *2 (N.D.N.Y. May 20, 2016) (in the absence of limiting instructions or court findings, the Commissioner may revisit on remand any issues relating to the application for benefits) (citing *Thompson*, 583 F. Supp. 2d at 475).

**B.   Analysis**

The parties disagree about whether this court's February 2019 remand order precluded the ALJ from revisiting her prior determination that plaintiff became disabled as of January 26, 2016. According to plaintiff, the court's instruction limited the ALJ to make a determination on remand, based on medical opinion and other evidence, of

12

plaintiff's disability onset date between the established period of March 12, 2012 and January 26, 2016. The Commissioner maintains that the ALJ complied with the court's February 2019 order, and that it was within the ALJ's discretion to reevaluate plaintiff's RFC on remand and conclude, based on Dr. Goldstein's testimony, that plaintiff was not disabled through the date of the ALJ's June 2020 decision.

For the following reasons, this court agrees that the mandate rule precluded the ALJ from revisiting plaintiff's disability status as of January 26, 2016. It is well settled that "[t]he mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010); *see also Carrillo v. Heckler*, 599 F. Supp. 1164, 1168 (S.D.N.Y. 1984) ("This principle [of law of the case] applies to all matters decided by necessary implication as well as those addressed directly."). To this end, when determining whether an issue may be reconsidered on remand, a district court "should look to both the specific dictates of the remand order as well as the broader spirit of the mandate." *Yick Man Mui,* 614 F. 3d at 53 (quoting *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001)).

Here, the February 2019 remand order specifically stated my legal findings and limited instructions to be taken upon remand; both at the conclusion of the opinion as well as upon my initial identification of the issues in contention:

> This court concludes, for the reasons set forth below, that substantial medical opinion and other evidence does not support the ALJ's determination as to when plaintiff's condition worsened to the point that no longer had the "sustained capacity required

13

> during the course of a forty-hour workweek to meet the quality production, and attendance requirements of remunerative work." [ ] Accordingly, the case should be remanded so that the ALJ can obtain appropriate medical opinion evidence that would support a determination as to when, between March 12, 2013 and January 26, 2016, plaintiff's limitations worsened to the point that she became disabled.

*Stacy D.,* 358 F. Supp. 3d at 204, 213. Throughout the body of my opinion, I expressed doubt about the adequacy of the ALJ's analysis of plaintiff's disability onset date, finding that the "ALJ's conclusion that plaintiff's functional limitations first worsened to the point that she became disabled in January 2016, is not consistent with the medical evidence documenting that plaintiff's symptoms and limitations . . . fluctuated between 2013 and 2016." *Stacy D.,* 358 F. Supp. 3d at 209. In drawing this conclusion, and by specifically directing the ALJ to procure medical evidence supporting when, between March 12, 2013 and January 26, 2016, plaintiff became disabled, the court made clear its reliance on, and affirmation of, the Commissioner's unchallenged finding that plaintiff was disabled as of the latter date. *See Ayer v. Comm'r of Soc. Sec.*, No. 5:15-CV-15, 2016 WL 11580280, at *6 (D. Vt. May 11, 2016)("[T]he broader spirit of the mandate is inconsistent with an invitation to reconsider the previous favorable . . . determination[ ].").

Admittedly, this court's remand order made no express determination about plaintiff's disability status after January 26, 2016, or whether that determination was supported by substantial evidence. However, the ALJ's finding of disability was not being challenged at the district court level. The plaintiff, of course, did not dispute the favorable portion of the ALJ's decision, and on appeal the Commissioner argued that

14

plaintiff's impairments did not prevent her from engaging in substantial gainful activity *before* January 26, 2016. *Id.* at 204. This follows logic, as a "district court in a Social Security appeal 'is never called upon to address issues resolved in the claimant's favor; the claimant obviously cannot challenge such determinations, and the Commissioner cannot challenge them because they were made by him (or his delegate) in the first place.' " *Frank K.*, 371 F. Supp. 3d at 172 (quoting *Calderon v. Astrue*, 683 F. Supp. 2d 273, 276–77 (E.D.N.Y. 2010)). Thus, in concluding that the potential existence of a pre-January 26, 2016 disability onset date required further analysis, I implicitly and necessarily affirmed the favorable portion of the ALJ's disability decision granting benefits after that date.

The Commissioner minimizes the significance of this court's narrowly tailored mandate, claiming that ultimately the ALJ complied with the court's directive that she procure additional medical evidence. The Commissioner contends that, after obtaining such evidence, the ALJ properly presented this court's "precise inquiry" to Dr. Goldstein. However, it is clear from the record that this was not the case. The ALJ did not ask Dr. Goldstein to offer an opinion as to when, if at all, plaintiff became disabled during the period in question. Instead, the ALJ asked Dr. Goldstein if plaintiff lost the ability to perform full-time, sedentary work *at any time*, based on the evidence before him. Had the ALJ framed the question appropriately to Dr. Goldstein, his opinion that plaintiff could perform sedentary work, or even modified light work, may have constituted substantial evidence for the ALJ's determination that plaintiff's disability onset date was no sooner than January 26, 2016. However, the ALJ improperly applied

15

her interpretation[3] of Dr. Goldstein's testimony to the time period for which the ALJ previously found that a finding of disability was warranted – a determination that was not, and could not, be challenged by the parties, and was implicitly affirmed by this court upon review. *See Ayer v. Comm'r of Soc. Sec.*, 2016 WL 11580280, at *6 (ALJ improperly reconsidered previous favorable step-two determination where "prior favorable severity findings were not on appeal to the Appeals Council, and nothing in the remand order suggest[ed] that the Appeals Council had any doubts about those findings.").

Both the ALJ at the agency level, and the Commissioner on appeal, rely on the language in the Appeals Council's order as support for the ALJ's authority to reconsider plaintiff's post-January 2016 disability status. Specifically, the ALJ noted that the Appeals Council "vacated the [prior] hearing decision and remanded the case for further proceedings," thus leaving plaintiff's entire application open to reassessment. (T. 703). The court is not so persuaded. The Appeals Council's remand order specified that the ALJ conduct "further proceedings consistent with the order of the court" (T. 818), yet further proceedings consistent with the order of the court should have been limited the ALJ to obtaining testimony for consideration of the identified time period. *See Marvin v. Colvin,* 2016 WL 11477507 at *7 (rejecting Commissioner's argument on same basis). To the extent that it did not direct the ALJ to incorporate the post-January 26, 2016 disability finding that was affirmed by this court,

---

[3]The ALJ interpreted Dr. Goldstein's testimony as his opinion that plaintiff could perform, at most, modified light work. This conclusion, however, is at odds with Dr. Goldstein's contemporaneous admission that he did not review any medical records from the period after 2016, thus could not opine on plaintiff's functional abilities after that date.

16

the Appeals Council's act of vacating[4] the decision was improper. Accordingly, this court concludes that the ALJ's decision to revisit plaintiff's disability status as of January 26, 2016 was legal error, notwithstanding the language in the Appeals Council order. *See id.* ("[D]espite the fact that the regulations provide that an Appeals Council may reassess any issues on remand, where the court has specified limiting instructions, and has [implicitly] found that the severity and RFC determinations were supported by substantial evidence, an ALJ's decision to revisit these issues is legal error.") (alteration to original).

## VII. APPROPRIATE REMEDY

Having determined that the ALJ erred in reconsidering plaintiff's disability status after January 26, 2016, rather than limiting the proceedings to procure evidence and determine when, if at all, plaintiff became disabled prior to that date, the court must next determine the appropriate remedy. As the Second Circuit has instructed,

> [i]n deciding whether a remand is the proper remedy, we have stated that where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate. That is, when further findings would so plainly help to assure the proper disposition of the claim, we believe that remand is particularly appropriate. On the other hand, where this Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to remand for a calculation of benefits.

---

[4] "Although the Commissioner does not explicitly argue as such, the undersigned recognizes that by vacating the ALJ determination following this Court's remand order, there was no valid decision remaining. *See* BLACK'S LAW DICTIONARY 1584 (8th ed. 2004) ("Vacate ... 1. To nullify or cancel; make void; invalidate")." *Marvin v. Colvin*, No. 3:15-CV-74 (GLS/CFH), 2016 WL 11477507, at *7 (N.D.N.Y. Feb. 16, 2016), *report and recommendation adopted*, 2016 WL 2968051 (N.D.N.Y. May 20, 2016).

17

*Butts v. Barnhart*, 388 F.3d 377, 385–86 (2d Cir. 2004). Here, it is possible that the evidence procured by the ALJ may have ultimately supported a conclusion by the ALJ that plaintiff's disability onset date was no earlier than January 26, 2016. However, the court declines to speculate how the ALJ would have evaluated the evidence had she complied with the court's directive, in the absence of any analysis to that effect. *See Otis v. Soc. Sec. Admin., Com'r*, No. 5:12-CV-167, 2013 WL 2422627, at *12 (D. Vt. June 3, 2013) ("A court may not speculate as to the reasoning of an ALJ and must not engage in a post hoc effort to supplement that reasoning.") (citing See *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir.2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.")).

Accordingly, it is recommended that this matter be reversed and remanded to the Commissioner. On remand, consistent with this court's February 1, 2019 Memorandum-Decision and Order, the ALJ is instructed to make a determination supported by substantial medical opinion evidence of on what date, between March 12, 2013 and January 26, 2016, plaintiff's limitations worsened to the point that she became disabled.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 14, 2022

*Andrew T. Baxter*
Andrew T. Baxter
U.S. Magistrate Judge